# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LEON DAVIS,

                    Petitioner,

v.                                              Case No. 2:05-CV-72236

ANDREW JACKSON,

                    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Leon Davis, a state inmate currently incarcerated at the Mound

Correctional Facility in Detroit, Michigan, has filed a *pro se* petition for a writ of habeas

corpus.  Petitioner challenges his convictions for second-degree murder and possession

of a firearm during the commission of a felony.  Because the court finds that Petitioner's

claims are meritless, the court denies the petition.

## I.  BACKGROUND

Petitioner's convictions arise from the shooting death of Darryl Sturdivant on

June 22, 1982.  The Michigan Court of Appeals summarized the testimony leading to

Petitioner's convictions as follows:

> Defendant was accused of a shooting death occurring on June 22, 1982,
> at approximately 6:00 a.m.  Witnesses testified that the defendant visited
> the victim's home to pick up prescription pills, which the victim sold from
> his home.  One witness testified that defendant was essentially a
> "doorman" for the victim's illegal prescription drug business.
>
> Another witness [Carol Typinski], who lived across the street from the
> victim, testified that on June 21, 1982, she saw defendant at the victim's
> house.  She stated that on June 22, 1982, at approximately 5:55 a.m., she
> was awake and sitting beside her daughter's bed, which was "right under

the window," when she heard a gunshot.  Within seconds, she stated, she heard glass breaking and saw the victim falling out of an upstairs window. She also saw defendant leaning out of the window and shooting at the victim.  She could see a side view of the defendant's face, and his arm, as he leaned out the window.  She stated that she observed defendant leave the victim's house and walk down the street.

After the victim fell out of the window, he got up, ran past two or three houses, and eventually pounded on a neighbor's door for help.  No one responded, and the victim died in the neighbor's driveway.

*People v. Davis*, No. 243809, slip op. at 1-2 (Mich. Ct. App. March 4, 2002).  Petitioner was located in New York twenty years after the shooting and extradited to Michigan under the name Willie Rose.

Following a bench trial in Wayne County Circuit Court, Petitioner was convicted of second-degree murder and possession of a firearm during the commission of a felony.  He was sentenced to fifteen to twenty-five years imprisonment for the second-degree murder conviction and two years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims through counsel:

I.      The trial court committed reversible error when it refused to suppress the identification testimony of witness Carol Typinski after it was demonstrated that the officer who conducted the photographic showup improperly showed Ms. Typinski a single photograph of the defendant, after she failed to identify him in the photo array and identified another individual in the photo array as the actual perpetrator.

II.     Defendant was denied due process of law and the right to confrontation guaranteed by the United States Constitution where, over defense counsel objection, the trial court admitted witness Mark Sirriana's preliminary examination testimony into evidence at trial.

III.    The trial court abused its discretion by admitting evidence of little or no probative value which unfairly prejudiced Mr. Davis' right to a fair trial.

IV.     Trial counsel's failure to object to irrelevant, highly prejudicial evidence

that Mr. Davis allegedly engaged in illegal prescription pill business with decedent, denied Mr. Davis his federal and state constitutional right to effective assistance of trial counsel.

Petitioner also filed a *pro se* supplemental brief, presenting the following additional claims:

I. Trial counsel was ineffective in failing to use state's witness's prior inconsistent testimony for impeachment purposes.

II. Trial counsel was ineffective for failing to object to the prosecutor's reference to his alleged fingerprint on a cigarette package.

III. Trial counsel was ineffective for failing to prepare for trial and to call witnesses.

IV. Trial counsel was ineffective for advising Petitiner to take a bench trial.

V. The prosecutor presented false testimony.

VI. The evidence was insufficient to convict.

The Michigan Court of Appeals affirmed Petitioner's convictions. *See Davis*, *supra*.

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, presenting the following claims:

I. The trial court refused to suppress the identification.

II. Defendant was denied due process of law and right to confrontation.

III. The trial court abused its discretion by admitting evidence of little or no probative value which unfairly prejudiced Mr. Davis's right to a fair trial.

IV. Trial counsel failure to object.

V. Retained counsel was ineffective in failing to adequately prepare for trial and one day to prepare for trial. Retained counsel's ineffectiveness prejudiced defendant's right to a fair trial.

VI. [Defendant's] due process rights were violated by the prosecutor's failure to investigate.

3

Petitioner filed a supplemental brief presenting the following additional issues:

I.      Mr. Cripps was ineffective for advising defendant to waive jury trial.

II.     Mr. Cripps was ineffective for failure to object to judge's erroneous findings.

III.    Mr. Cripps was ineffective for failure to get an independent evaluation of either the ballistic or forensic evidence, or even expert ballistic testimony.

IV.     Mr. Cripps failure to move for a continuance was ineffective assistance of counsel, after only one day to prepare for trial.

V.      Mr. Cripps was ineffective for failure to move to suppress the in court identification testimony of Carol Typinski.

Petitioner filed an amended supplemental brief, presenting the following additional claim:

> It is defendant's contention that the trial court committed error when it admitted witness Mark Sirriana's preliminary examination testimony into evidence at trial. This was a violation of the defendant's 6th amendment right. And the defendant's right to confrontation. *Crawford v. Washington*, US 123 S. Ct. 1354 (2004) where the court allowed the preliminary examination testimony to be read into the record. The defendant was denied due process of law and the right to confrontation guaranteed by the United States and Michigan constitutions.

The Michigan Supreme Court denied leave to appeal. *People v. Davis*, No. 125962 (Mich. Jan. 31, 2005).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the following claims:

I.      Refused to suppress identification in-court.

II.     Defendant's right to confrontation denied defendant due process of law.

III.    Trial court abused discretion.

IV.     Ineffective assistance of counsel.

4

V.    Trial counsel was ineffective for not objecting to the prosecutor vouching for the credibility of witness Carol Typinski.

VI.    Trial counsel was ineffective for not moving for a continuance to prepare for trial in the present case.

VII.    Trial counsel was ineffective for not raising the due process violation regarding misinformation in computer records.

VIII.    Trial counsel was ineffective for failing to investigate.

IX.    Trial counsel was ineffective for not objecting to judge's erroneous finding of guilt.

X.    Trial counsel was ineffective for not getting ballistics test or independent evaluation of forensic evidence or finger print.

XI.    Trial counsel was ineffective for giving bad advice regarding jury waiver.

XII.    Trial counsel was ineffective for failing to interview potentially effective alibi witness of whom defendant had advised him.

XIII.    Trial counsel was ineffective in failing to impeach the state's only witness with prior inconsistent testimony.

XIV.    Trial counsel was ineffective for failing to impeach Sgt. Gerds for giving false testimony.

XV.    Trial counsel was ineffective for failing to move for a mistrial for prosecutor's improper remarks in opening statement.

XVI.    Trial counsel was ineffective where trial counsel took part in a sham trial.

XVII.    Appellate counsel was ineffective for failure to raise the issue of improper remarks by the prosecution in opening statement.

XVIII.    Appellate counsel was ineffective for not filing motion for new trial in trial court.

XIX.    Appellate counsel was ineffective because he would not communicate with Defendant before filing a brief.

XX.    Appellate counsel was ineffective for not arguing issues which are dead bang winners.

5

Respondent filed a motion to dismiss the petition on the ground that the following claims are unexhausted: V, VII, IX, X, XIV, XVII, XVIII, XIX, and XX.  In response, Petitioner filed a "Motion to Delete Unexhausted Claims."  The court granted the motion. The following claims remaining pending before the court: I-IV, VI, VIII, XI-XIII, XV, and XVI.

## II.  STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA") applies to all habeas petitions filed after the effective date of the act, April 24, 1996.  Because Petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144

6

F.3d 429 (6th Cir. 1998). Additionally, this court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[1]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .

---

[1]        28 U.S.C. § 2254(e)(1) provides, in pertinent part:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

[A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

*Id.* at 410-11.

## III.  DISCUSSION

### A.  Failure to Suppress Identification Testimony

In his first claim for habeas corpus relief, Petitioner argues that the trial court erred in failing to suppress the identification testimony of Carol Typinski.  She lived across the street from the victim and observed the shooting.  Detroit Police Officer Robert Gerds showed her a photo array that included a photograph of Petitioner, but Typinski identified a different individual as the perpetrator.  Moments later, Officer Gerds showed Typinski Petitioner's driver's license photograph.  She then identified Petitioner as the perpetrator.  Petitioner argues that this suggestive procedure compelled exclusion of Typinski's identification testimony.

The trial court conducted a *Wade* hearing[2] to determine the admissibility of Typinski's identification testimony. Officer Gerds testified that, prior to being shown the photo array, Typinski informed Officer Gerds that the perpetrator was well-known to her as "Slim."  She testified that she had seen "Slim" at the victim's house between twenty-five and fifty times over the several months preceding the shooting.  At the time of the shooting, Typinski recognized the man leaning out the window of the victim's house as

---

[2]*United States v. Wade*, 388 U.S. 218 (1967).

8

"Slim," and saw that man leave the victim's home moments after the shooting.  She

further testified that her identification of Petitioner as the perpetrator was based upon

her seeing Petitioner twenty-five to fifty times outside the victim's home in the months

leading up to the shooting and her seeing Petitioner on the day of the shooting.

Following the *Wade* hearing, the trial court found Typinski's identification testimony

admissible.

On direct appeal, the Michigan Court of Appeals held that the trial court did not

commit clear error in finding that the identification was reliable despite the suggestive

confrontation procedure:

> Photographic identification procedures violate a defendant's due process
> rights if they are so impermissibly suggestive as to give rise to a
> substantial likelihood that there will be a misidentification.  *People v Gray*,
> 457 Mich 107, 111; 577 NW2d 92 (1998).  An improper suggestion may
> arise when a witness is shown only one person or a group in which one
> person is singled out in some way.  *Id.*  But even if the pretrial
> identification procedure could be considered unduly suggestive and
> impermissibly tainted, an in-court identification is still appropriate where
> there is an independent basis for the in-court identification, untainted by
> the suggestive pretrial identification procedure. . . . To determine whether
> an independent basis exists, the following factors are considered: (1) the
> witness's prior knowledge of the defendant; (2) the witness's opportunity
> to observe the criminal during the crime; (3) the length of time between the
> crime and the disputed identification; (4) the witness's level of certainty at
> the prior identification; (5) discrepancies between the pretrial identification
> description and the defendant's actual appearance; (6) any prior proper
> identification of the defendant or failure to identify the defendant; (7) any
> prior identification of another as the culprit; (8) the mental state of the
> witness at the time of the crime; and (9) any special features of the
> defendant. . . .

> After reviewing the record, we are satisfied that the trial court did not
> commit clear error in finding that the relevant factors predominated in
> favor of an independent basis for the witness' in-court identification.
> Testimony clearly indicated that the witness was familiar with defendant
> before the day in question.  The witness stated she had seen defendant
> on at least fifty occasions before the homicide.  The witness observed

9

defendant during the crime and recognized him with certainty.  Further, the trial court found that defendant's facial hair and hairstyle were significantly different on his driver's license and his photo in the array, which could explain why the witness did not initially recognize defendant when viewing the photo array.  Moreover, the witness maintained that her identification of defendant at the 2002 preliminary examination was based on having actually seen him in 1982, and not on any photos.  Thus, we find that reversal is not warranted.

*Davis,* slip op. at 2.

"A conviction based on identification testimony that follows a pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994).  A court must undertake a two-step analysis to determine the validity of a pretrial identification.  First, the court must determine whether the procedure was unduly suggestive.  If the court finds that the procedure was unduly suggestive, the court must then "evaluate the totality of the circumstances to determine whether the identification was nevertheless reliable."  *Id.*  Where an in-court identification was potentially impacted by an impermissibly suggestive out-of-court lineup, the governing test is whether "under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive."  *Neil v. Biggers*, 409 U.S. 188, 199 (1972).

Ms. Typinski had many opportunities to view Petitioner entering and exiting the victim's house prior to the crime.  She testified that she had a clear view of Petitioner as he leaned out the window shooting at the victim and, moments later, when he exited the house.  At that time, she recognized him to be Petitioner.  Considering all of these

10

factors, this Court concludes that the state court's determination that the identification

was reliable was not contrary to or an unreasonable application of Supreme Court

precedent.

### B.  Admission of Preliminary Examination Testimony

In his second claim for habeas corpus relief, Petitioner argues that his right of

confrontation was violated when the trial court admitted the preliminary examination

testimony of Mark Sirriana.  Petitioner challenges the trial court's finding that Mr.

Sirriana was unavailable, and maintains that he was not provided a complete and

adequate opportunity to cross-examine Mr. Sirriana.

Respondent argues that this claim is procedurally defaulted.  The doctrine of

procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in
> state court pursuant to an independent and adequate state procedural
> rule, federal habeas review of the claims is barred unless the prisoner can
> demonstrate cause for the default and actual prejudice as a result of the
> alleged violation of federal law, or demonstrate that failure to consider the
> claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Such a default may occur if the state

prisoner fails to comply with a state procedural rule that required her to have done

something at trial to preserve her claimed error for appellate review, e.g., to make a

contemporaneous objection.  *United States v. Frady*, 456 U.S. 152, 167-69 (1982);

*Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).  Application of the cause and

prejudice test may be excused if a petitioner "presents an extraordinary case whereby a

constitutional violation resulted in the conviction of one who is actually innocent."  *Rust*

*v. Zent*, 17 F.3d 155, 162 (6th Cir. 1994); *see also Dretke v. Haley*, 541 U.S. 386, 393

(2004); Murray v. Carrier, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001), cert. denied, 536 U.S. 947 (2002); see also *Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992). The last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground[] only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson*, 94 F.3d at 202. Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 375 (2002). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals, the last court to issue a reasoned opinion denying this claim, held that the claim was not preserved for appellate review because Petitioner failed to object to the admission of the preliminary examination transcript at trial on the same ground advanced on appeal. The contemporaneous-objection rule

was firmly established and regularly followed with respect to claims regarding the admission of evidence at the time of Petitioner's trial.  *See People v. Aldrich*, 246 Mich. App 101, 113 (Mich. Ct. App. 2001); Mich. R. Evid. 103.  Petitioner fails to assert cause to excuse his procedural default.  His claim is therefore barred unless he can establish that a constitutional error resulted in a fundamental miscarriage of justice.  *Schlup v. Delo*, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence.  *Schlup*, 513 U.S. at 321.  Petitioner must assert a constitutional error along with a claim of innocence.  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."  *Id.*  This evidence "must show that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt."  *Id.* at 327.  Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty.  Consequently, this claim is barred from consideration by procedural default.

### C.  Admission of Testimony Regarding Drug Trafficking

Petitioner argues that the trial court erred in permitting Mr. Sirriana to testify regarding Petitioner's involvement in drug trafficking.  Respondent argues that this claim is also procedurally defaulted.

The last state court to address this claim in a reasoned opinion, the Michigan Court of Appeals, held that the claim was unpreserved for review because counsel failed to object to the testimony.  The contemporaneous-objection rule was firmly

13

established and regularly followed with respect to claims of improper admission of other acts evidence at the time of the petitioner's trial. *See, e.g., People v. Griffin*, 235 Mich. App. (Mich. Ct. App. 1999); *People v. Asevedo*, 217 Mich. App. 393 (Mich. Ct. App. 1996); *People v. Buckey*, 424 Mich. 1, 17-18, 378 N.W.2d 432, 440 (1985). The fact that the state court of appeals engaged in plain error review of the prosecutorial misconduct claims does not constitute a waiver of the state procedural default. *See Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir. 2000). Rather, the review on those terms constitutes enforcement of the state procedural rule. *See Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001).

Petitioner alleges ineffective assistance of counsel as cause to excuse his procedural default. The Supreme Court has held that "cause" under the cause and prejudice standard must be "something external to the petitioner, something that cannot fairly be attributable to him." *Coleman*, 501 U.S. at 753. The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error. . . . Attorney error that constitutes ineffective assistance of counsel is cause, however." *Id.* at 753-54 (internal citations omitted).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth

14

Amendment." *Id.* at 687. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689

Petitioner presented his claim that his attorney was ineffective for failing to object to the admission of this evidence on direct review. The Michigan Court of Appeals held that the evidence was properly admitted because it was relevant to Petitioner's identity as the shooter and identity was a central issue in the case, and its probative value was not substantially outweighed by the possibility of unfair prejudice. Because the evidence was properly admitted, the state court held that counsel was not ineffective in failing to object to its admission.

Petitioner has failed to show that the state court's conclusion that the evidence was properly admitted and that, consequently, counsel was not ineffective in failing to lodge an objection was contrary to or an unreasonable application of Supreme Court precedent. Accordingly, the court denies this claim.

### D. Ineffective Assistance of Counsel

Petitioner's remaining claims are based upon allegations of ineffective assistance of counsel. Specifically, Petitioner claims counsel rendered ineffective assistance by: (1) failing to move for a continuance to prepare for trial, (2) failing to investigate, (3) rendering bad advice regarding jury waiver, (4) failing to interview alibi witnesses, (5) failing to move for a mistrial based upon prosecutor's opening statement, and (6) taking

15

part in a sham trial which sent an innocent man to jail.

As discussed above, the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. *Strickland,* 466 U.S. at 687 (1984). The two-pronged test requires a petitioner to prove that counsel's performance was deficient, and that counsel's deficient performance prejudiced petitioner. *Id.*

The Michigan Court of Appeals denied Petitioner's ineffective assistance of counsel claims in one sentence: "We also reject defendant's claims of ineffective assistance of counsel as unsupported by a showing of serious error or prejudice." *Davis*, slip op. at 5. Where a state court, although deciding a claim, does not offer some explanation of its decision, a federal court must conduct an independent review of the state court's decision which requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). "Yet, any independent review that is conducted must remain deferential to the state court's decision and cannot amount to a 'full *de novo* review of the claims.'" *Joshua v. DeWitt*, 341 F.3d 430, 447-48 (6th Cir. 2003), quoting *Harris*, 212 F.3d at 943. Because the state court failed to offer a reasoned explanation for its ruling denying Petitioner's ineffective assistance of counsel claims, this court will conduct an independent review of this claim "'through the lens of § 2254(d).'" *Id.* at 448, *quoting Price v. Vincent*, 538 U.S. 634, 639 (2003).

The court also notes that the court's review of Petitioner's ineffective assistance

16

of counsel claims is limited to the record before it.  Petitioner has not requested an evidentiary hearing in this court, but even if he had filed such a motion, he would not satisfy the standard for an evidentiary hearing.

A federal court may not conduct an evidentiary hearing where the petitioner has failed to develop the factual record in state court, except under limited circumstances, including where the petitioner diligently attempted to develop the factual basis, but was unable to do so.  *Williams v. Taylor*, 529 U.S. 420, 437 (2000).  "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by law."  *Id.*  In this case, Petitioner filed a motion to remand in the Michigan Court of Appeals for an evidentiary hearing on his ineffective assistance of counsel claims.  The Michigan Court of Appeals denied the motion because Petitioner failed to file the motion in the manner required by Michigan Court Rule 7.211(C)(1).  *Davis*, No. 243809 (Mich. Ct. App. Nov. 10, 2003).  Because Petitioner failed to comply with the applicable state procedural rule, his effort to develop the factual record lacked diligence and he is not entitled to an evidentiary hearing on habeas review.  *Accord White v. Cason*, No. 04-cv-75071, 2006 WL 763194, *13 (E.D. Mich. March 24, 2006).  Therefore, the court's analysis of the ineffective assistance of counsel claims is limited to the record before it.

### 1.  Failure to Move for a Continuance

Petitioner claims that his attorney was ineffective in failing to move for a continuance.  On the day Petitioner's trial commenced, Petitioner's attorney, William Glenn, filed a Motion to Withdraw.  The trial court granted the motion.  Immediately upon the trial court's granting of the motion, Petitioner's substitute counsel, David

17

Cripps, filed a substitution of counsel. Petitioner indicated on the record that he had no objection to the removal of Glenn or the appointment of Cripps. Petitioner now argues that Cripps had insufficient time to prepare for trial. As discussed below, Petitioner fails to show that Cripps was ineffective. Therefore, he fails to show that he was prejudiced by his attorney's failure to request a continuance.

### 2. Failure to Conduct Adequate Pretrial Investigation

Petitioner next claims that counsel was ineffective in failing to conduct adequate pretrial investigation. Under *Strickland*, trial counsel has a duty to investigate:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-91. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (citation omitted).

Petitioner alleges that counsel failed to investigate Typinski. Petitioner maintains that he should have investigated her "to see what her motive was for [lying]. Or to see if she had a criminal record. Or what kind of deal she got. Or how much this unemployed witness got." Petitioner's Brief at p. 37. Essentially, Petitioner advocates a blanket investigation by defense counsel into Typinski's background and motives for testifying without any specific allegation that any of these lines of investigation would have

18

uncovered evidence useful to the defense.  The trial transcript reflects that counsel comprehensively cross-examined Typinski on her ability to see the perpetrator from inside her home, her failure to identify him in the photo array and various discrepancies in her account of the shooting.  Petitioner has not established that counsel's handling of Typinski was inadequate or prejudiced Petitioner's defense.

Petitioner maintains that counsel also should have determined to whom unidentified fingerprints found in the victim's home belonged, the caliber of the bullet that killed the victim, and why Sirriana initially failed to appear for the preliminary examination.  At trial, the parties stipulated that four fingerprints were found at the scene, one identified as Petitioner's.  Of the remaining three fingerprints, the parties stipulated that one was not usable and the other two did not match any identified person.  Petitioner does not specify what further steps counsel could have taken to identify these fingerprints.  With respect to the remaining failure to investigate claims, Petitioner fails to provide any support for his conclusory claim that investigation into these areas would have proved fruitful.  A conclusory claim, not supported by facts, will not entitle a petitioner to habeas corpus relief.  *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir.1991).  Accordingly, Petitioner fails to show this attorney was ineffective in this regard.

### 3.  Decision to Waive Jury Trial

Next, Petitioner claims that counsel was ineffective in persuading him to waive his right to a jury trial.  Petitioner states that he decided to waive his right to a jury trial because counsel told him that the judge was fair, and maintains that, if he had proceeded to a jury trial, the outcome would have been different.

19

Petitioner's argument is in essence based upon the *ex post* premise that because the trial judge later found him guilty, his attorney was ineffective in advising him to waive a jury trial. Defense counsel's decision to recommend a bench trial was one of trial strategy and Petitioner has failed to overcome the presumption that counsel's advice in this regard was sound trial strategy. Moreover, "there is no constitutional requirement that a defendant be affirmatively disabused of the idea that he will get more lenient treatment if he waives a jury trial." *Highers v. Kapture,* 93 Fed. Appx. 48, 50 (6th Cir. 2004). Thus, the Court finds that Petitioner has failed to show that his attorney was ineffective in recommending he waive his right to a jury trial.

### 4. Failure to Interview Alibi Witnesses

Petitioner claims that counsel was ineffective in failing to interview four alibi witnesses: Donna Petralla, Diane Walker, Geneva Campbell and Brenda Griffin. The first three of these witnesses were individuals who lived on the same street as the victim. Petitioner characterizes them as alibi witnesses, but they are properly characterized as potential eyewitnesses. Based upon the record before the court, it appears that Walker and Knox both saw a "thin" black male, between 6' and 6' 3" flee from the scene of the shooting, and that Petralla heard gunshots and saw a black male flee the scene. This information is gleaned from a police report Petitioner attaches to his brief. Petitioner provides no further information regarding these witnesses. He does not provide affidavits as to what their testimony might have been[3] nor is the court

---

[3] The court can, however, observe the possibility of a relationship between Petitioner, known to Typinski as "Slim," and the fleeing perpetrator, described by these two additional witnesses as having a "thin" build. Also, just as Typinski had recalled, these witnesses described the fleeing man as wearing a hat.

conclusively able to determine from the record before it that counsel did not investigate these potential witnesses.  Similarly, Petitioner fails to state with any particularity Griffin's relevance to his defense.  She apparently told police that two men in the neighborhood were known as "Slim," (a nickname by which Petitioner was known), but that the two "Slims" had very different physical appearances.  Petitioner has not presented any information to show that, other than the presence of two "Slims" in the neighborhood, Griffin would have provided any relevant information. Moreover, defense counsel cross-examined Officer Gerds regarding Griffin's statement to police. Therefore, Petitioner has not shown, first, that counsel failed to investigate these potential witnesses or, assuming counsel did indeed fail to investigate them, what information relevant to his defense they may have provided.

### 5.  Failure to Impeach Eyewitness Testimony

Petitioner next argues that counsel was ineffective in failing to impeach Typinski with her prior inconsistent testimony.  In fact, a review of the trial transcript shows that defense counsel cross-examined Typinski extensively on her prior inconsistent statements.  Therefore, this claim is meritless.

### 6.  Failure to Move for a Mistrial

Petitioner argues that counsel was ineffective in failing to move for a mistrial because, in his opening statement, the prosecutor stated that Petitioner's fingerprint was found on a cigarette pack in the victim's home.  In fact, the parties stipulated that the fingerprint found on the cigarette pack remained unidentified, but did stipulate that a fingerprint on a telephone in the victim's kitchen matched Petitioner's fingerprint.  The prosecutor's misstatement as to where the fingerprint identified as Petitioner's was

21

located certainly did not rise to the level of misconduct.  Therefore, the court rejects

Petitioner's argument that his counsel was ineffective for failing to move for a mistrial on

this basis.

### 7.  Participation in "Sham Trial"

Finally, Petitioner argues that counsel was ineffective in participating in a "sham

trial."  As explained above, Petitioner has failed to show that any aspect of his trial

violated his constitutional right to a fair trial. The Court accordingly interprets the "sham

trial" assertion as merely a general, pejorative description of the trial. The claim is

denied.

### IV.  CONCLUSION

For the foregoing reasons, IT IS ORDERED that the petition for a writ of habeas

corpus [Dkt. # 1] is DENIED and the matter is DISMISSED WITH PREJUDICE.


　　　　　　　　　　　　 S/Robert H. Cleland
　　　　　　　　　　　　ROBERT H. CLELAND
　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

Dated:  February 26, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, February 26, 2007, by electronic and/or ordinary mail.

　　　　　　　　　　　　 S/Lisa Wagner
　　　　　　　　　　　　Case Manager and Deputy Clerk
　　　　　　　　　　　　(313) 234-5522